SABIN, ADM'R OF BELDING, *against* ROBERT HAMILTON.

APPEAL *from Sevier Circuit Court.*

An assignment of a covenant, under the Territorial Law, passed no legal interest in the covenant, to the assignee, so as to enable him to sue on it in his own name: but it unquestionably passed the equity.

When a party sues, as executor, &c., there must be a substantial averment in the pleadings, showing that he sues in his representative capacity, and nothing by intendment can be taken to supply the want of such an allegation.

But it is immaterial in what part of the declaration or pleadings, such averment occurs. And therefore, where, in the breach, the declaration alleges that the defendant " has not paid to the intestate in his life-time, nor to the plaintiff *as administrator aforesaid,*" this is sufficient.

No precise or technical words are necessary to constitute a covenant, but any words which show the intention of the parties will be sufficient for that purpose.

The inquiry always is, what were the intentions of the parties? And if there be any ambiguity, such construction is always given as will make most strongly against the covenantor.

Where a party to a covenant by which he was bound to do certain acts, upon the performance of which the other party was to become indebted to him in a certain sum, endorses upon it under his seal, that he *certifies* that the agreement has been complied with on his part, and that the other party is therefore indebted to him as provided in the covenant, all of which, in consideration of a certain sum to him in hand paid by a third person, he assigns to such third person; and adds, that the other party to the covenant " will, on sight, pay to such third person" the amount according to contract: such endorsement is a covenant.

And in it are contained three distinct and separate covenants: first, that the covenantor had performed his part of the original covenant; second, that the other party to the original covenant was indebted to him in the amount specified; and third, that said party would pay it on sight.

And in a declaration upon such second covenant, the breach is not sufficient where it is, merely, that the covenant sued on was presented to the other party to the original covenant, and that he refused to pay according to its true meaning and effect.

Absent, RINGO, *Chief Justice.*

This was an action of covenant instituted by Sabin, as administrator of Ludovicus Belding, deceased. Richard C. Byrd, Ludovicus Belding and Jesse Shelton, entered into a contract under seal, by which the latter agreed to furnish and supply the emigrating Choctaw Indians 2200 rations, to be delivered according to the terms of the contract which the parties of the first part had made with the agent of the United States, for supplying those Indians with 360,000 rations. And in consideration of the party of the second part com-

plying with his agreement, the parties of the first part bound themselves to pay him the same proportionable price for the rations that they were to receive from the United States; which payment they were not bound to make until the government had paid them for the whole amount of rations they agreed to deliver.

This agreement was specially set out in the declaration by way of inducement to the action; and it was then alleged that upon the back of the original contract was the following endorsement: " I hereby certify that the within agreement is complied with on my part (that is to say) that I have furnished twenty-two thousand rations as agreed within, for which the said Byrd, Belding and Shelton are now indebted to me for the amount of each ration, at the price the government pays said Byrd, Belding and Shelton, or either of them, as per contract; all of which, for and in consideration of the sum of seventeen hundred and fifty dollars, to me in hand well and truly paid by L. Belding, the receipt whereof is hereby acknowledged, I now assign to said Belding all my right and claim to the within agreement, and the said Byrd, Belding and Shelton will, on sight, pay to said Belding, or order, the amount of said rations, according to contract with government.   Witness my hand and seal at Little Rock, 6th September, 1833.                            R. Hamilton, [seal."]

Upon this instrument the action was founded.

The breach of covenant alleged in the declaration was, that the contract sued on was presented to Byrd, Belding and Shelton, and they were specially requested to make payment thereof, and that they refused to pay according to its true meaning and effect.   Oyer having been prayed and granted, the defendant demurred to the declaration, and his demurrer was sustained—whereupon final judgment was entered.

TRAPNALL & COCKE, for the appellant:

In the first place it is urged in support of the demurrer, that Sabin has shown no title upon the record to maintain this suit, inasmuch as there is no averment that he sues as administrator.   In the commencement of the declaration he has described himself as Aaron N. Sabin, administrator, &c., and if there was nothing else on the record to

show his representative character, we admit this objection would be fatal. But we find in the subsequent part of the declaration he is named as administrator, which is to show his representative character, and to entitle him to maintain this suit as such. And so this court in the case of *Brown vs. Hicks*, 1 *Ark. Rep.* 232, have declared.

But admitting that the plaintiff's right to sue has been sufficiently shown on the record, it is in the next place insisted that the declara- ration contains no statement of a legal cause of action. This objec- tion is founded upon a manifest misconstruction of the covenant de- clared on. What is the legal of this instrument? It is evidently an obligation on the part of Hamilton by which he covenants that he has complied with the within agreement—that he had furnished the twen- ty-two thousand rations. That Byrd, Belding and Shelton were then indebted to him for each ration at the price the government was to pay them, and that Byrd, Belding and Shelton will, at sight, pay to said Belding, or order, the amount of said rations according to con- tract with government.

" No particular form of words or expressions is necessary to create a' covenant, and for that purpose any words will be effectual which show that the parties to a deed have concurred and assented to the per- formance or forbearance of a future act." *Marshall vs. Craig*, 1 *Bibb*, 379; *Kendall vs. Talbot*, 2 *Bibb*, 614.

" The recital of an agreement in a deed will create a covenant upon which an action of covenant will lie as well as if it had been contained in the body of the deed." *Beall's adm'r, vs. Shoals' ex'r*, 1 *Marsh*, 475.

If then Hamilton had not complied with his agreement referred to; if he had not delivered the twenty-two thousand rations; if Byrd, Belding and Shelton were not then indebted to him; or if Byrd, Belding and Shelton would not, at sight, pay to said Belding, or or- der, the amount of said ration, according to contract with government, Hamilton's covenant was broken, and a right of action immediately accrued to Belding to recover the damages he may have sustained by reason of this agreement. It is a complete answer to the objection that Belding was bound to sue Byrd, Belding and Shelton, and pur- sue them to insolvency, before Hamilton could be liable. For having

covenanted that Byrd, Belding and Shelton would pay, at sight, his covenant was broken the moment they refused to pay after sight of the covenant.   The covenantor is always bound to make good his covenant to the covenantee, and when A. covenants with B. that C. shall do or abstain from doing a particular act, it is incumbent on A. to see that C. does perform or abstain from doing the particular act.   And it is not necessary that B. should make use of all the coercive power of the law to compel a compliance on the part of C. to entitle him to his remedy against A. for a breach of the covenant.   For the right accrues the moment the covenant is broken.

We cannot imagine by what process of reasoning the counsel for the appellee has arrived at the conclusion that the consideration paid by Belding was a payment of so much for the firm of Byrd, Belding and Shelton to Hamilton, in discharge of the contract, on the back of which the assignment was made, and that the assignment was an extinguishment of the contract, and a release of any claim which Hamilton might have under said contract over and above the said sum of $1760.   Or, in other words, that the covenant of Hamilton was nothing more than a receipt in full to Byrd, Belding and Shelton, for the twenty thousand rations which he had agreed to furnish for them to the Indians.   This objection is so far fetched and so repugnant to the terms of the covenant itself, as to render an agreement to remove it unnecessary.   The rule in the construction of covenants, recognized by this court in the case of *Gaster vs. Ashley*, is that they must be taken most strongly against the covenantor.   And it is manifest, from the whole instrument, that this assignment and the covenants therein contained was an individual transaction between Belding and Hamilton, with which the firm of Byrd, Belding and Shelton had nothing to do.   Belding had advanced to Hamilton the sum of $1760, and Hamilton, in consideration thereof, assigns this contract to Belding, and covenants that he has performed his part—that Byrd, Belding and Shelton are indebted to him therefor, and that they will, on sight, pay the said sum to Belding.   And we again repeat that, having broken this latter covenant, Belding's right of action instantly accrued.   And the court below erred in sustaining the demurrer.

TRIMBLE, *Contra:*

It will be remembered that *Belding*, the plaintiff, was, at the time of the assignment, one of the firm of *Byrd, Belding* and *Shelton.*

The first objection to the declaration is, that the suit is not brought in the name of Sabin, as administrator, &c., 1 *Ark.* 238, *Brown vs. Hicks.*

Second. There is no cause of action set forth in the declaration. The declaration and writings, made part of the record, show that Byrd, Belding and Shelton were indebted to Hamilton at least the full amount of the seventeen hundred and sixty dollars—that Hamilton would only be responsible for that amount of the rations—and whatever that sum may be, the firm of Byrd, Belding and Shelton would owe him that much; so that, in fact, the declaration shows that nothing is really due from Hamilton.

Third. The declaration does not show any sum of money that Byrd, Belding and Shelton were to pay Hamilton for what sum Hamilton assigned.

Fourth. Before Hamilton can be made responsible on this assignment, the plaintiff was bound to see Byrd, Belding and Shelton, and pursue them to insolvency, before Hamilton could be made liable by virtue of the assignment; and this must be averred in the declaration. 1 *Ark.* 330, *Gaster vs. Ashley.*

Fifth. The true construction of this assignment is, that the alleged consideration paid by Belding was a payment of that sum by Belding for the firm of Byrd, Belding and Shelton, to said Hamilton, in discharge of the contract, on the back of which the assignment was made, that it was an extinguishment of the contract, and the assignment was a release of any claim Hamilton might have, under the contract, over and above the said sum of $1760.

There is no breach or allegation that the money had not been delivered according to contract. There is no allegation that the money was not due.

Belding, by the recitation, being a party to the covenant, admits that the rations had been delivered, and that the sum was due; he also accepted the order.

LACY, *Judge*, delivered the opinion of the court:

The instrument sued on contains an assignment of a contract coupled with a warranty. It is perfectly clear to our minds that the assignments passed no legal interest in the contract attempted to be assigned, according to our statute of assignments, then in force, to the plaintiff, in such manner as to enable him to maintain the action in his own name. *Steele and McCampbell's Dig. p. 74, sec.* 1. But the assignment unquestionably passes the equity in the contract.

It is contended in behalf of the defendant in error that the declaration is defective, because it wholly fails to show that the plaintiff sued in his representative character or capacity. The doctrine upon this subject is correctly laid down in *Brown vs. Hicks*, and in *Lyon vs. Evans, and others*, 1 *Ark.* 241 and 365. And if the declaration falls within the principles established in these cases, it is certainly defective on demurrer. If a party sues an executor, there must be a substantive averment in the pleadings, showing that he sued in his representative capacity, and nothing by intendment shall be taken to supply the want of such an allegation. But it is immaterial in what part of the declaration or of the pleadings that averment occurs.

The declaration now under consideration expressly contains such an averment, and unquestionably shows that the plaintiff sued in his representative, and not in his individual capacity, for it alleges that Byrd, Belding and Shelton failed to pay the intestate in his life-time for the rations delivered by him, nor have they, as yet, paid the same or any part thereof to the said plaintiff *as administrator as aforesaid.* The enquiry then is, what is the character and nature of the agreement sued on? Is it a covenant or collateral undertaking? No precise or technical words are necessary to create a covenant, but any words which show the intention of the parties will be sufficient for that purpose. Covenant is agreement of two or more persons by deed in writing, sealed and delivered, whereby either one or the other of them doth promise that something is done already, or shall be done afterwards. The true inquiry always is, what are the intentions of the parties? In construing such agreements, it must be considered in reference to the context, and performed according to the spirit and

intention of the parties. If there be any ambiguity in its terms, such construction must be given as will militate most strongly against the covenantor. By applying these rules to the instrument sued on, they will readily determine its true character. *Gaster vs. Ashsey*, 1 *Ark.* 335, *and authorities there cited.*

The latter part of the agreement purports to assign the contract the defendant held upon Byrd, Belding and Shelton to Ludovicus Belding; but this clause, although wholly inoperative as an assignment at law, certainly does not vitiate or destroy the component parts of the agreement. The first clause certifies that the defendant's contract to supply 22,000 rations for Byrd, Belding and Shelton, has been complied with on his part, and that they are indebted to him for the amount of the supplies at the price agreed upon, which was to be ascertained by reference to their contract with the government. This is certainly a covenant; for it certifies that the covenantor had performed his part of the agreement with Byrd, Belding and Shelton, by delivering the 22,000 rations of supplies for the emigrating Choctaw Indians, and that they stood indebted to him for the amount of rations so delivered. It is true that the amount is not set out in the agreement, but that is capable of being ascertained by reference to Byrd, Belding and Shelton's contract with the government, which fixes the price which is to be paid for each ration. The word certify, which is used in the agreement, is certainly equivalent in its signification and meaning to the word promise, agree or declare, and these latter words are as capable of covenant, as the words grant, warrant or guarantee. Does the term certify, as used in the instrument, correspond with that covenant? That it does, is perfectly manifest, from the fact that the instrument is put under seal, and that it was the covenantor's intention to make such an agreement, and so it was understood by the covenantee as well as himself. For upon this certification or warranty, he paid the covenantor the sum of $1750, and to it he looked for indemnity in full confidence that its stipulations would be complied with. The last clause in the instrument, after reciting the assignment, contains this peculiar and significant expression, " that the said Byrd, Belding and Shelton will pay, on sight, to said Belding, or order, the amount of said rations according to this contract." What, then, is the

meaning of this language? It is a covenant that Byrd, Belding and Shelton will pay, at sight, the amount of rations delivered according to their contract. And does the covenantor certify that fact to the covenantee? This latter part of the sentence has no connection with the assignment although it immediately follows it. For the sense of the agreement would be unintelligible upon any such interpretation. To assign that Byrd, Belding and Shelton would pay at sight, is an unmeaning and useless expression. But to certify that they would do so is both intelligible and rational.

The instrument is under seal, and that gives to it such a character of a covenant as carries with it a good or valuable consideration, and it must be construed and taken most strongly against him who executed it. This being the case, the covenantor certified to Ludovicus Belding, Byrd, Belding and Shelton's indebtedness to him, and that they would pay said Belding on sight. There are three distinct and separate covenants in the agreement, and upon each of these covenants the covenantor is bound to make his stipulation good: First, that he had performed his part of the agreement; second, that Byrd, Belding and Shelton were due him for the rations he had delivered; and, thirdly, that they would pay the amount then due to Ludovicus Belding at sight. All these three things he covenanted were true, and he cannot now be permitted to exonerate himself from any of them, provided the plaintiff has properly charged him in his declaration.

It is said, in behalf of the defendant, that the covenant was not binding upon the party making of it, for it was a guaranty to Ludovicus Belding, who constituted one of the firm of Byrd, Belding and Shelton, and therefore his making the agreement operated as a payment by one partner for the benefit of the firm, and consequently no action could be maintained upon such a contract. It is wholly impossible for this court, judicially, to know any such thing. The defendant has not thought proper to put such fact in issue. And the record no where shows that Ludovicus Belding was one of the firm of Byrd, Belding and Shelton.

The declaration is very inaccurately drawn, and sets out no substantial breach in such manner as will render the defendant liable. It contains no averment that the defendant had not performed his part

of the agreement with Byrd, Belding and Shelton, neither does it allege that they were not indebted to him by reason of non-performance of his contract. It states that the agreement sued on was presented to Byrd, Belding and Shelton, and they refused to pay according to its true meaning and effect, and upon this allegation it attempts to charge the liability of the defendant. The allegation is wholly insufficient for that purpose, for it fails to state at what time the covenant was presented, or by whom presented; and nothing can be presumed by way of intendment that will cure the defect. Whether it was presented before or after the assignment, or by whom presented, it is impossible to determine. There is no specific allegation that they failed to pay at sight. The averment relied on is therefore insufficient to raise any liability. There being no sufficient breaches assigned, of course the court below rightly sustained the demurrer. The judgment of the circuit court must therefore be affirmed with costs.